UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KOMAA MNYOFU,                    )
                                 )
            Plaintiff,           )
                                 )
      v.                         )
                                 )    Case No. 10-cv-7870
BOARD OF EDUCATION OF RICH       )
TOWNSHIP HIGH SCHOOL DISTRICT    )    Judge John W. Darrah
227; HOWARD HUNIGAN;             )
SONYA NORWOOD;                   )
NATHANIEL MOTTEN, JR.;           )
DONNA LEAK; and PAUL WINFREY,    )
                                 )
            Defendants.          )
                                 )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Komaa Mnyofu, filed a Complaint against the Board of Education of

Rich Township High School District 227 (the "Board"); Howard Hunigan;

Sonya Norwood; Nathaniel Motten, Jr.; Donna Leak; and Paul Winfrey (the "Individual

Defendants"), pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the

First Amendment. Specifically, Mnyofu brings the following claims against all

Defendants: First Amendment Violations (Count I); Conspiracy (Count II); Intentional

Infliction of Emotional Distress (Count III); and Breach of October 2008 Settlement

Agreement (Count IV). Before the Court are the Individual Defendants' Motion to

Dismiss and the Board's Motion to Dismiss.

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint and are accepted as true for purposes of the Motions to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Mnyofu is a resident of Richton Park, Illinois, who regularly attended and participated in bi-monthly public Rich Township High School District 227 (the "District") meetings. (Compl. ¶¶ 6, 13.) The public District meetings are a forum for citizens to voice their concerns and opinions about the District and the Board. (*Id.* ¶ 13.) Hunigan and Leak were the Superintendents of the District until July 2010. (*Id.* ¶¶ 8, 11.) Norwood is the President of the Board. (*Id.* ¶ 9) Officer Winfrey is a police officer with the Park Forest Police Department. (*Id.* ¶ 12.)

This is not Mnyofu's first time in this court, nor is this his first lawsuit against some of these Defendants. In December 2003, Mnyofu brought a 42 U.S.C. § 1983 action in this district, making similar allegations to those he makes in his instant Complaint, against the Board, then-Board Superintendent, and various other Board employees. *See Mnyofu v. Bd. of Education*, No. 03-cv-2005 (N.D. Ill.). Mnyofu alleged that defendants prevented him from attending and speaking at Board meetings and threatened him with arrest and prosecution if he went on or near the premises of the schools located in the District. (Compl. ¶ 15.) In 2005, Hunigan issued a "Notice of No Trespass" banning Mnyofu from communicating with District employees and from approaching District school grounds. (*Id.* ¶ 12.) In 2008, the parties entered into a settlement agreement (the "2008 Settlement Agreement"), under which Mnyofu agreed to dismiss his claims and defendants agreed to pay Mnyofu a confidential monetary amount

and notify the local police department that the prohibition against Mnyofu's attendance at District meetings was lifted.

On May 13, 2009, Matteson School District 162's counsel sent Hunigan a letter requesting documents relating to the resolution of the dispute between Mnyofu and the District pursuant to the Illinois Freedom of Information Act, 5 ILCS 140/1, *et seq.* (Compl., Ex. C.) On May 27, 2009, counsel for the District responded to the 5/13/09 request by sending a letter, enclosing the 2008 Settlement Agreement. In the letter, counsel acknowledged that the Matteson District needed the document in order to proceed in some form of a public hearing involving Mnyofu. (*Id.*, Ex. D.) The 2008 Settlement Agreement contains a liquidated damages clause, which awards $15,000 to the non-breaching party in the event the other party discloses the settlement amount in violation of the agreement. (*Id.* ¶ 17.)[1]

On October 1, 2009, Mnyofu went to the District meeting held at Rich Central High School and was scheduled to speak during the "public forum" portion of the meeting. (*Id.* ¶ 19.) Mnyofu voiced concern that the Superintendent selection process had been conducted unfairly in the past. (*Id.*) After the meeting, Motten approached Mnyofu, claiming to be a police officer, showed Mnyofu his gun in a confrontational manner, threatened him with arrest, and ejected Mnyofu from school grounds. (*Id.*)

On October 20, 2009, Mnyofu was again scheduled to speak at a District meeting held at Rich Central High School. (*Id.* ¶ 21.) Before the meeting, Mnyofu was approached by police officers and ordered to leave the school grounds. (*Id.*) Mnyofu

---

[1] The parties both cite to the 2008 Settlement Agreement, but none of the parties has provided the Court with a copy.

alleges that Officer Mark Akiyama indicated to him that he was acting under the instructions of Hunigan. (*Id.*) Mnyofu subsequently left the school grounds and did not speak at the District meeting. (*Id.*) That same day, the Board's counsel sent him a letter regarding a flier Mnyofu circulated. (*Id.* ¶ 24.) The flier made several allegations against the Board, one of which was that the Cook County State's Attorney was investigating allegations of a kickback scheme involving Board members, including Hunigan. (Compl., Ex. A.) According to the Board's counsel, Mnyofu's name appeared at the bottom of the flier. (*Id.*) The 10/20/09 letter asked Mnyofu to provide to the Board's counsel any evidence supporting the flier's allegations and the name of the Assistant State's Attorney who was involved in the alleged investigation to the Board's counsel. (*Id.*) Otherwise, Mnyofu was asked to cease and desist from publishing such accusations. (*Id.*)

On October 21, 2009, Hunigan issued a "Notice of No Trespass" letter, banning Mnyofu from all District property where a Board meeting is being held beginning one hour before the start of the meeting and continuing until one hour after the meeting is adjourned. (Compl., Ex. B.) The 10/21/09 letter stated that Mnyofu had disrupted the 10/1/09 Board meeting "by shouting, speaking out of turn, and acting in a threatening manner that made several people fearful for their safety." (*Id.*) The 10/21/09 letter further stated that if Mnyofu wished to address the Board, he may do so in writing sent directly to Hunigan. (*Id.*)

On November 17, 2009, Mnyofu distributed informational leaflets to those attending the meeting and placed leaflets on the windshields of parked cars in the parking

lot of Rich South High school. (*Id.* ¶ 26.) Mnyofu was approached by Officer Winfrey, who referenced the "Notice of No Trespass," and asked Mnyofu to stop distributing leaflets and leave the school grounds. (*Id.*) Mnyofu alleges that Winfrey threatened to arrest him if he failed to comply with his request. (*Id.*)

Thereafter, Mnyofu alleges, between November 17, 2009 and April 19, 2010, Mnyofu did not attend any District meetings because of the "Notice of No Trespass" and the threat of arrest. (*Id.* ¶ 27.) Then on April 20, 2010, Mnyofu attended another District meeting at Rich East High School. (*Id.* ¶ 28.) Although Mnyofu initially met resistance from the police to enter, he was eventually permitted into the school. (*Id.*) On May 6, 2010, Mnyofu attended another District meeting and spoke during the "public forum" portion of the meeting. (*Id.* ¶ 29.) During his speech, Mnyofu raised concerns about a teacher who was formerly employed by the District who had been convicted of raping a student; he raised inquiries as to what procedures the Board was taking to protect students. (*Id.*) Before Mnyofu was done speaking, Norwood called the meeting into adjournment and told Mnyofu that he would not be talking about anything. (*Id.*) At another District meeting on May 18, 2010, Mnyofu made public comments and raised the fact that he was being harassed by a District employee. (*Id.* ¶ 30.) Thereafter, Norwood asked a Board security official to ask Mnyofu to stop speaking. (*Id.*) On June 15, 2010, when Mnyofu was engaged in a conversation with Norwood about his right to speak at Board meetings, a Board security official attempted to remove him from the school grounds. (*Id.* ¶ 31.) At another Board meeting on June 30, 2010, Mnyofu made public comments that it would be detrimental to the District to replace Principal Rainey from

Rich Central High School. (*Id.* ¶ 32.) Thereafter, the acting Board President, Tony Brunson, ended the "public forum" portion of the meeting. (*Id.*)

On July 8, 2010, Mnyofu, a member of the Rich Central Parent Teacher Student Organization ("PTSO"), attended a meeting between PTSO and Leak. (*Id.* ¶ 33.) Mnyofu alleges that Leak ordered District personnel to videotape Mnyofu while he was in the meeting and ordered a Board security official to sit next to Mnyofu during the meeting. (*Id.*) When Mnyofu spoke, the security official, who Mnyofu alleges was acting under orders from Leak, ordered Mnyofu to stop speaking. (*Id.*) Mnyofu also alleges that the new principal, Patricia Welch, accused him of not living in the District. (*Id.*) On July 14, 2010, when Mnyofu was distributing information leaflets that advocated for the reinstatement of Rainey as school principal, Mnyofu alleges that Welch approached Mnyofu and began harassing him and ordered him to leave. (*Id.* ¶ 34.)

From September 2009 through May 2010, Mnyofu alleges that District employees who were acting under the orders of Hunigan followed and harassed Mnyofu while he was on District grounds. (*Id.* ¶ 35.) Mnyofu further alleges that there has been an increased police presence at the public District meetings, involving more than four police officers being present at public meetings, which usually average about 15-20 participants. (*Id.* ¶ 36.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain

statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*Iqbal*). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

Exhibits attached to the Complaint are considered "part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004). The "well-settled rule" is that "when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations." *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998).

## ANALYSIS

*First Amendment Claim, 42 U.S.C. § 1983 (Count I)*

The Individual Defendants set forth two arguments as to why they should be dismissed from the lawsuit. First, the Individual Defendants contend that they should be dismissed with prejudice in their official capacities. (Ind. Defs.' Br. at 3-4.) Specifically, because Mnyofu alleges his Section 1983 claims against the Board, the case law holds that claims against individuals in their official capacities are redundant. Mnyofu concedes this argument is correct. (Resp. at 7, n.1.) Therefore, Count I is dismissed as to the Individual Defendants in their official capacities with prejudice.

Second, the Individual Defendants argue that Count I should be dismissed against them in their individual capacities because they are entitled to qualified immunity. A government official is protected from individual liability under § 1983 "for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1022 (7th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1987)). A two-part test is used to resolve the issue of qualified immunity. Under this test, the court first determines whether the facts alleged, considered in the light most favorable to the party asserting injury, show that the government officials' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer is yes, the court then considers whether the constitutional right violated was firmly established at the time of the alleged injury, such that a

8

reasonable official would understand that her actions are in violation of that right. *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007); *see also Pearson v. Callahan*, 129 S.Ct. 808, 828 (2009) (modifying this test to allow a court to use its discretion in determining which of the prongs should be analyzed first.). Here, the parties dispute whether Mnyofu was engaged in a clearly established constitutional right.[2] The Individual Defendants argue that the Board has the right to subject members of the public to reasonable constraints at Board meetings. They cite 105 ILCS 5/10-16, which states: "At each regular and special meeting which is open to the public, members of the public and employees of the district shall be afforded time, subject to reasonable constraints, to comment to or ask questions of the board." (Ind. Defs.' Br. at 6.) Mnyofu responds that the Individual Defendants were engaged in view-point based efforts to suppress his right to free speech. (Resp. at 8.)

The extent to which a state institution may restrict speech depends on the nature of the forum. If the state property is a public forum or a designated public forum, any content-based restrictions, promulgated with reference to the content of the speech being restricted, are subject to strict scrutiny and must serve a compelling state interest and be narrowly drawn to achieve that purpose. *Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37, 45-46 (1983). The government may also impose "[r]easonable time, place and manner regulations that are content-neutral" which serve a significant government interest and leave open "ample alternative channels of communication." *Id.*

---

[2] The First Amendment's protection of freedom of expression against government intrusion is applicable to Individual Defendants by way of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969) (applying First Amendment rights to states by way of the Due Process Clause of the Fourteenth Amendment).

The Individual Defendants acknowledge that meetings of public school boards are considered a designated public forum. (Ind. Defs.' Br. at 6.) In public forums the "government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

Based on the facts alleged in Mnyofu's Complaint, which are accepted as true, Mnyofu has asserted constitutionally based claims that the Individual Defendants violated his First Amendment rights. In determining the sufficiency of the pleadings, the factual question of whether any regulation of Mnyofu's First Amendment right was content-neutral and reasonable in time, place, and manner is not reached. At this juncture, therefore, it would be premature to grant the Individual's Defendants' Motion to Dismiss Count I on the grounds of qualified immunity.

The Board argues that Mnyofu's First Amendment claim against the Board should be dismissed because the Individual Defendants did not violate Mnyofu's constitutional rights and because Mnyofu has failed to set forth sufficient facts to support his § 1983 claim. With respect to its first argument, the Board makes the same arguments as those made in the Individual Defendants' brief, quoted above. Specifically, the Board argues that Mnyofu's constitutional rights were not violated because the Board has the right to subject members of the public to reasonable constraints at Board meetings. As discussed above, based on the facts alleged in Mnyofu's Complaint, Mnyofu has pled the violation of constitutionally based claims.

Regarding the Board's second argument, the Board argues that Mnyofu has not alleged that the Board had a policy of discriminating against Plaintiff. In order to state a § 1983 claim, Mnyofu must show one of the following: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law'; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.'" *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995) (*McTigue*). The Board cites *McTigue* in support, but that case is readily distinguishable. In *McTigue*, the plaintiff asserted boilerplate, conclusory allegations that failed to provide any factual basis to support plaintiff's claims. *Id.* at 383. By contrast here, Mnyofu has adequately pled that the Board had an express policy that caused Mnyofu a constitutional deprivation and that his alleged constitutional injury was caused by a Board member with final policy-making authority. Specifically, Mnyofu sufficiently pled allegations that the Board had a policy of silencing Mnyofu at Board meetings. (Compl. ¶¶ 20, 25, 31, 36-37.) Mnyofu further alleges that Norwood, the head official of the policy-making body of the District, restrained Mnyofu's First Amendment rights. (*Id.* ¶ 9.) For the reasons discussed above, the Board's Motion to Dismiss Count I is denied.

### Conspiracy (Count II)

Defendants argue that the intra-corporate conspiracy doctrine bars Mnyofu's claim of conspiracy. Mnyofu responds that this doctrine does not apply to § 1983 claims, in part, because the Seventh Circuit had not held so. Under that doctrine, members of the

11

same entity acting within the scope of their employment cannot be considered to be acting in "conspiracy" with each other. *Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 632 (7th Cir. 1999) (*Payton*). Although the origins of the doctrine are in corporate law, the majority of district courts in the Seventh Circuit apply the concept to § 1983 cases. *See Stenson v. Town of Cicero*, No. 03-cv-6642, 2005 WL 643334, at *8 (N.D. Ill. Mar. 15, 2005) (citing *Tabor v. City of Chicago*, 10 F. Supp. 2d 988, 994 (N.D. Ill. 1998) (collecting cases)). Notably, in *Payton*, the Seventh Circuit applied the intra-corporate conspiracy doctrine outside of the corporate context. *Payton*, 184 F.3d. at 632-33 ("Although *Wright* focused on corporate managers, nothing in its reasoning precludes us from applying it to supervisors and subordinates, so long as all are working in the corporation's (or **governmental entity**) interest.") (emphasis added).

Mnyofu argues that the Defendants are not employed by the same entity because Norwood and Hunigan are Board members, Leak and Motten are district administrators, and Winfrey was acting as a Park Forest police officer. (Resp. at 12.) Mnyofu has not pled Winfrey is a "co-conspirator" but argues that "the facts alleged in the Complaint show his involvement in the conspiracy." (*Id.*) But with respect to Winfrey, Mnyofu fails to allege an essential element of a conspiracy claim: an agreement. *See Mosley v. City of Chicago*, 614 F.3d 391, 399 (7th Cir. 2010) (holding that conspiracy requires "an agreement to accomplish either an unlawful purpose or a lawful purpose by unlawful means."). The remaining four Defendants, who are all employed by the District, are part of the same governmental entity. *See Crowly v. Bd. of Educ. of Lockport Tp. High School Dist. 225*, 699 F. Supp. 1283, 1292 (N.D. Ill. 1988) (holding that intraconspiracy

12

doctrine applied to plaintiff's claims against school board, teacher, school principal, and district superintendent). Mnyofu further argues that the intracorporate conspiracy doctrine does not apply because the Individual Defendants were not acting within the scope of their employment. (Resp. at 11-12.) Mnyofu's allegations (*see, e.g.,* Compl. ¶¶ 19, 29, 33) regarding the Individual Defendants' conduct raises questions of fact as to whether they acted in the scope of their employment that are not properly reached in resolving a motion to dismiss.

The Individual Defendants' Motion to Dismiss Count II must also be denied because at this stage of litigation, there are factual issues regarding whether the Individual Defendants' actions fall within the two exceptions to this doctrine. The Seventh Circuit recognizes two scenarios in which the doctrine does not apply: (1) when employees are motivated solely by personal bias such that the interests of the corporation did not influence the employees' actions and (2) when the conspiracy is part of a broad discriminatory pattern. *Hartman v. Bd. of Trustees,* 4 F.3d 465, 470 (7th Cir. 1993).

Mnyofu has pled allegations that are sufficient to avoid the application of the intracorporate-conspiracy doctrine bar at this stage of ligation. For example, Mnyofu's allegations that he made public comments critical of the District support a reasonable inference that the Individual Defendants were motivated by a personal desire to protect themselves from criticism. (*See* Compl. ¶¶ 19, 22.) Furthermore, Mnyofu alleges that the four District employees engaged in a conspiracy involving acts occurring over a period of sixteen months. *See Boloun v. Williams,* No. 00-cv-7584, 2002 WL 31426647, at *12 (N.D. Ill. Oct. 25, 2002). For these reasons, the Individual Defendants' and the

Board's Motions to Dismiss Count II are denied; but the Individual Defendants' Motion is granted as to Defendant Winfrey for failure to state a claim against him.

*Intentional Infliction of Emotional Distress (Count III)*

To state a claim for intentional infliction of emotional distress under Illinois law, Mnyofu must allege: "(1) extreme and outrageous conduct; (2) intent or recklessness to cause emotional distress; (3) severe or extreme emotional distress suffered by the plaintiff; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (citing *Pub. Fin. Corp. v. Davis*, 66 Ill.2d 85, 89 (1976)). Defendants argue that Mnyofu has not alleged any evidence of extreme or outrageous conduct by Defendants. In his Complaint, Mnyofu alleges that "[t]he conduct and acts of Defendants as alleged herein, were extreme and outrageous, done intentionally, willfully and wanton . . . ." But Mnyofu fails to provide any detail to substantiate this general, conclusory allegation. In his response brief, Mnyofu specifies that Defendants' threats of arrest if he continued to exercise his First Amendment rights constitutes such conduct.

Whether conduct is extreme and outrageous is "evaluated on an objective standard based on all of the facts and circumstances." *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 936 (1st Dist. 2004). "Mere insults, indignities, threats, annoyances, petty oppressions, or trivialities" do not qualify as extreme and outrageous conduct." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 20 (1992) (*Kolegas*). Here, Mnyofu's allegations do not rise to the level of extreme or outrageous conduct. *See, e.g., Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (affirming dismissal of intentional

infliction of emotional distress claim where conduct alleged by plaintiff did not rise to the level of extreme and outrageous). Mnyofu only alleges that Defendants threatened him with arrest. Even considering threats are more likely to be part of outrageous conduct when the person making them is in a position of authority, Mnyofu's allegations fail to establish outrageous or extreme conduct. *See Kolegas*, 154 Ill.2d at 21 ("the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.").

Nor has Mnyofu sufficiently pled the other elements of intentional infliction of emotional distress. In particular, Mnyofu has failed to allege any facts that support his conclusory assertions that he experienced severe emotional distress. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. Therefore, Defendants' Motions to Dismiss Count III are granted.[3]

### Breach of 2008 Settlement Agreement (Count IV)

Mnyofu alleges that the Board[4] breached the 2008 Settlement Agreement's confidentiality clause when it revealed the amount of payment made to Mnyofu under

---

[3] However, recently, the Illinois Supreme Court issued an opinion — which as of the date of this opinion has not yet been published and remains subject to revision — holding that the Illinois Local Government and Government Employees Tort Immunity Act, 745 ILCS 10/2-201 immunizes employees who act willfully and wantonly. *See Reis v. City of Chicago*, No. 109541, 2011 WL 681814, at *12 (Ill. Feb. 25, 2011).

[4] Mnyofu agrees that this claim should be dismissed as against the Individual Defendants as they are not parties to the Agreement. (*See* Resp. 13, n.2.)

that Agreement in response to a request by the Matteson District on May 27, 2009.[5] (Compl. ¶ 17.) The Board argues the Settlement Agreement was provided to the Matteson District in accordance with the Illinois Freedom of Information Act, 5 ILCS 140/2.20 ("FOIA"). The Board notes that the Settlement Agreement provides that: "should this agreement or its terms be requested pursuant to subpoena, statute or other lawful process or as otherwise required by law, said disclosures will not constitute a breach of the confidentiality clause." (Compl. ¶ 60.)

FOIA § 2.20 provides that "[a]ll settlement agreements entered into by or behalf of a public body are public records subject to inspection and copying to the public, provided that information exempt from disclosure under Section 7 of the Act may be redacted." FOIA further clarifies that a school board is a "public body." 5 ILCS 140/2(a). Mnyofu contends that this FOIA provision was not in place at the time the Board disclosed the Settlement Agreement; therefore, the Board's argument is moot. (Resp. at 13.) In its reply, the Board fails to respond to this argument and is deemed to have admitted the effective date of the amendment.

Section 2.20 was added by Illinois Legislation, 96-542, § 10, which was approved on August 17, 2009, and explicitly states that it is effective January 1, 2010. Because Section 2.20 was not in effect at the time the Board disclosed the Settlement Agreement on May 27, 2009, the Board's argument is meritless. Therefore, the Board's Motion to Dismiss Count IV is denied.

---

[5] The 5/27/09 letter is attached to the Complaint and is considered part of the pleadings for all purposes. Fed. R. Civ. P. 10(c);

## CONCLUSION

Therefore, the Court's ruling on the Board's Motion to Dismiss is as follows: Count I is denied; Count II is denied; Count III is granted; and Count IV is denied. As to the Individual Defendants' Motion to Dismiss, the Court's ruling is as follows: Count I is granted as to Individual Defendants in their official capacities and denied as to Individual Defendants in their individual capacities; Count II is granted as to Defendant Winfrey and denied as to all other Individual Defendants; Count III is granted; and Count IV is granted.

Date: ___6-2-11___

JOHN W. DARRAH
United States District Court Judge