UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOMAA MNYOFU,            ) | |
|           ) | |
|       Plaintiff,     ) | |
|          ) | |
|    v.         ) | |
|          ) | Case No. 10-cv-7870 |
| BOARD OF EDUCATION OF RICH   ) | |
| TOWNSHIP HIGH SCHOOL DISTRICT  ) | Judge John W. Darrah |
| 227; HOWARD HUNIGAN;     ) | |
| SONYA NORWOOD;       ) | |
| NATHANIEL MOTTEN, JR.;    ) | |
| DONNA LEAK; and PAUL WINFREY,  ) | |
|          ) | |
|      Defendants.    ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Komaa Mnyofu, filed a Complaint against the Board of Education of

Rich Township High School District 227 (the "Board"); Howard Hunigan;

Sonya Norwood; Nathaniel Motten, Jr.; Donna Leak; and Paul Winfrey, pursuant to

42 U.S.C. § 1983, alleging violations of his rights under the First Amendment.

Plaintiff brings claims for First Amendment Violations (Count I); Civil Conspiracy

(Count II); and Breach of October 2008 Settlement Agreement (Count IV).  On

June 2, 2011, the Court dismissed Count II against Defendant Winfrey, Count IV against

all individual Defendants in their official capacities, and Count IV against all individual

Defendants.  *Mnyofu v. Board of Educ. of Rich Tp. High School Dist. 227*, No. 10-cv-

7870, 832 F. Supp. 2d 940, 950 (N.D. Ill. 2011) (*Mnyofu*).

Before the Court is Plaintiff's Motion for Partial Summary Judgment as to his

First Amendment claim, in part (Count I) and Breach of October 2008 Settlement

Agreement (Count IV).  Also before the Court is Defendants' Motion for Summary

Judgment as to all pending Counts of Plaintiff's Complaint.

## BACKGROUND

The following facts are taken from the parties Local Rule 56.1 statements of facts.

*Parties*

Plaintiff, Komaa Mnyofu is a citizen of the United States and a resident of Richton Park, Illinois.  (Defs.' 56.1(a)(3) ¶ 1.)  The Board is a unit of local government organized under the laws of the state of Illinois with offices in Cook County, Illinois. (*Id*. ¶ 2.)  Hunigan was Superintendent of Rich Township High School District 227 ("District 227") from 2005 until July 2010.  (*Id*. ¶ 3.)  Norwood was President of the Board at all times relevant to this lawsuit. (*Id*. ¶ 4.)  Motten was District 227 Police Liaison at all times relevant to this lawsuit.  (*Id*. ¶ 5.)  Leak has been the Superintendent of District 227 since July 2010.  (*Id*. ¶ 6.)  Winfrey is a police officer with the Park Forest Police Department and former District 227 Police Liaison Officer and Campus Supervisor for Rich East High School.  (*Id*. ¶ 7.)  This Court has subject-matter jurisdiction over the causes of action in the Complaint pursuant to 28 U.S.C. § 1331 and over the state-law claims pursuant to 28 U.S.C. § 1367.  (*Id*. ¶ 11.)

*Board Meetings*

Plaintiff attended and participated at District 227 board meetings on October 1, 2009; October 20, 2009; April 20, 2010; May 6, 2010; May 18, 2010; June 15, 2010; July 20, 2010; September 9, 2010; October 7, 2010; November 4, 2010;

November 16, 2010; December 21, 2010; January 18, 2011; and June 21, 2011.[1]

(*Id*. ¶ 12.)  Board Policy 2.230 states that "[a]t each regular and special open meeting, the members of the public and District employees may comment on or ask questions of the Board, subject to reasonable constraints" and that the Board President "may shorten or lengthen an individual's opportunity to speak."  (*Id*. ¶¶ 13-14.)  The Board President may also deny an individual an opportunity to speak if the individual has "previously addressed the Board on the same subject within the past two months."  (*Id*. ¶ 15.)

Board Policy 8.110 states that "Any individual may make a suggestion or express a complaint at any District or School office."  (*Id*. ¶ 18; Pl.'s 56.1(b)(3)(B) ¶ 18.)  If an individual is not satisfied after filing a complaint, he may file a grievance under the Uniform Grievance Procedure.  (Def.'s 56.1(a)(3) ¶ 19.)  On one occasion, Plaintiff followed the District's complaint process in connection with complaints he had with employees of District 227 or members of the Board.  (*Id*. ¶ 20.)

---

[1] As exhibits in support of their Motions for Summary Judgment, both parties have provided video recordings of numerous Board meetings and audio recordings of the October 1, 2009 and January 18, 2011 closed-session meetings.  However, the parties have failed to include a *written* transcript of any of these meetings.  This is seriously problematic for two reasons.  First, as to the audio recordings, the Court is left to decipher the distorted audio recordings, as well as attempt to surmise who the speakers are.  Similarly, with the video recordings, the lack of a written transcript makes it difficult to discern the identity of speakers and, at times, due to the low quality of the audio recording, what is actually being said.  Second, the parties, with occasional exceptions, provide only general citations to the audio and video recordings, rather than specific citations as to the time range (in minutes and seconds) of the recording upon which they rely.  Thus, the Court would be required to often speculate as to which part of the recording supports the parties' factual statement, as well as who is speaking and what is being said.  It is clear the parties have spent significant resources on this case and the failure to include written transcripts unfortunately precludes the consideration of the tapes in resolving the pending motions.

The "Open Forum – Non Agenda Items" portion of the Board Meeting Agenda states that remarks by any individual addressing the Board which would reflect adversely upon the character or motives of any person and attacks in the form of inferences, insinuations and innuendos against the character or motives of any person are out of order. (*Id*. ¶¶ 16-17.) Before speaking, all individuals have to fill out a card indicating the subject matter on which they intend to speak. (*Id*. ¶ 26.)

Current Board member Cheryl Coleman testified, with respect to the use of the gavel at Board meetings: "[W]hen I start to see the gavel happen, it is always in a position where the board was either not in agreement with what the person was saying, [or they] didn't want to hear the rest of it continued because it could be damaging to the district." (Pl.'s 56.1(b)(3)(C) ¶ 48.) Coleman testified that Plaintiff was one of the community members whom the Board gaveled before his time was up because his "facts" made the Board "uncomfortable." (*Id*. ¶ 49.) Board member Morgan testified that Norwood would instruct Plaintiff or anyone with whom she did not agree to stop talking because "[y]ou can only discuss what is agreeable to the Board majority." (*Id*. ¶ 50.)

At the October 1, 2009 Board meeting, while Plaintiff was speaking about his concerns that the Superintendent selection process was conducted unfairly, Norwood interrupted him before his designated time had concluded and gaveled the meeting to adjournment. (*Id*. ¶ 51.)

On October 15, 2009, Hunigan and Norwood testified that Plaintiff came to District 227's office and yelled at a receptionist, causing her to cry. (Defs.' 56.1(b)(3)(C) ¶ 18.) Plaintiff testified that he did not engage in such conduct. (Pl.s' Resp. to Defs.'

4

56.1(b)(3)(C) ¶ 18.)

At the October 20, 2009 Board meeting, there was an incident between Plaintiff and Hope Henderson, a teacher for District 227. (Defs.' 56.1(a)(3) ¶¶ 21-22.) Henderson claims that Plaintiff called her a "ho." (Defs.' 56.1(b)(3)(C) ¶ 3.) Plaintiff avers that he did not. (Pl.s' Resp. to Defs.' 56.1(b)(3)(C) ¶ 3.) Plaintiff was ejected from the meeting by Officer Akiyama at the direction of Hunigan, before he had a chance to speak to the Board. (Pl.'s 56.1(b)(3)(C) ¶ 53.)

At the April 20, 2010 Board meeting, Plaintiff did not mention his allegation that he was stopped from entering the school for close to two hours. (Defs.' 56.1(a)(3) ¶ 23.) At the May 18, 2010 Board meeting, Plaintiff made a complaint, concerning district employee Lydia Hernandez, during the public comment period of the meeting. (*Id*. ¶ 24.)

Plaintiff was the subject of discussions at the October 1, 2009, and January 18, 2011 closed-session meetings. (*Id*. ¶ 28.) At the October 1, 2009 meeting, Hunigan discussed receiving a letter from Plaintiff, concerning allegations against him, Dr. Selma McDonald, and Ilandus Hampton, and stated that the allegations were not true. (*Id*. ¶¶ 29-30.) The Board and Hunigan discussed that, at the open Board meeting that evening, Plaintiff may bring up the alleged improper use of District funds by District employees, including Hunigan. (Pl.'s 56.1(b)(3)(C) ¶ 46.)

Plaintiff was also the subject of discussion by Leak at the Board's January 18, 2011 closed-session meeting. (Defs.' 56.1(a)(3) ¶ 35.) Leak said she increased security at her home to protect her family from Plaintiff. (*Id*. ¶ 37.) Leak also

stated that employees at the District's office believed that Plaintiff's tone and manner was threatening.  (*Id*. ¶ 38.)

District Policy 8.025 states that "Advertising and Distributing Materials in Schools Provided by Non-School related Entities" provides that "no material or literature shall be posted in schools or distributed to students by non-school related organizations or individuals."  (*Id*. ¶ 39.)  Plaintiff attempted to pass out flyers on school property on multiple occasions.  (*Id*. ¶ 40.)

*October 21, 2009 Notice of No Trespass*

On October 21, 2009, Hunigan issued a "Notice of No Trespass" to Plaintiff ("Notice of No Trespass").  (Pl.'s 56.1(a)(3) ¶ 30.)  The Notice of No Trespass referenced Plaintiff's "inappropriate behavior" at the October 1, 2009 Board meeting and at the District office on October 15, 2009.  (*Id*. ¶ 31.)  The Notice of No Trespass stated that Plaintiff was "not permitted on any portion [of] District property where a Board of Education meeting or a Board committee meeting is taking place, beginning one (1) hour before the start of the meeting and continuing until one (1) hour after the meeting is adjourned."  (*Id*. ¶ 32.)

In his deposition, Hunigan testified that he did not remember any "particulars" of the October 1, 2009 meeting that caused him to reference that meeting in the Notice of No Trespass.  (*Id*. ¶ 36.)  Norwood testified in her deposition that nothing stood out from the October 1, 2009 meeting.  (*Id*. ¶ 37.)  Plaintiff did not attend any Board meetings from November 17, 2009 to April 19, 2010, because of the Notice of No Trespass. (*Id*. ¶ 38.)  Hunigan informed security officials of the Notice of No Trespass.  (*Id*. ¶ 39.)

Motten and Winfrey enforced the Notice of No Trespass and Norwood saw the Notice of Trespass. (*Id*. ¶¶ 40-41, 43.) On April 20, 2010, Chief Chudwin, of the Olympia Fields Police Department, informed Defendant Hunigan that he would no longer be enforcing the Notice of No Trespass. (*Id*. ¶ 42.) On April 20, 2010 Mr. Mnyofu was prohibited from entering the Board meeting for one to two hours because of the Notice of No Trespass. (*Id*. ¶ 43.)

*2008 Settlement Agreement*

In October 2008, Plaintiff entered into a Settlement Agreement with the Board (the "Agreement"), resolving Plaintiff's claims from a previous lawsuit concerning First Amendment claims that allegedly occurred in 2003. (Pl.'s 56.1(a)(3) ¶ 14.) Under the terms of the Agreement, Plaintiff agreed to dismiss his claims against the Board and other defendants, who in turn agreed to pay Plaintiff a confidential sum of money. (*Id*. ¶ 15.) The parties explicitly agreed in the Agreement that the amount of the settlement payment was to remain confidential, except the Agreement provides that: "should this agreement or its terms be requested pursuant to subpoena, statute or other lawful process or as otherwise required by law, said disclosures will not constitute a breach of the confidentiality clause." (*Id*. ¶ 16.) The Agreement contains a liquidated damages clause, which awards $15,000 to the non-breaching party in the event the other party discloses the settlement amount in violation of the Agreement. (*Id*. ¶ 18.)

On May 13, 2009, the attorney for Matteson School District No. 162 ("District 162") sent a letter to Hunigan, requesting, pursuant to the Illinois Freedom of Information Act ("IFOIA"), documents that constituted or referred to the settlement

agreement between District 227 and Plaintiff, as well as the payment of money in order to resolve a dispute between those parties. (*Id*. ¶ 20.) On May 27, 2009, the Board and Hunigan, through their legal representation, disclosed the Agreement to District 162. (*Id*. ¶ 22.)

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal citation omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## ANALYSIS

The arguments raised by Defendants and Plaintiff in their respective Motions for Summary Judgment and Partial Summary Judgment are largely duplicative and are addressed with respect to each of Plaintiff's Counts.

*First Amendment Claim (Count I)*

Defendants have moved for summary judgment as to Plaintiff's First Amendment claim, in its entirety. Plaintiff has moved for summary judgment in part, arguing that there is no material issue of fact that the Notice of No Trespass violated his First Amendment rights.

In order to state a First Amendment Violation under Section 1983, Plaintiff must show one of the following: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law'; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.'" *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

The extent to which a state institution may restrict speech depends on the nature of the forum. There are three types of forums:

> Traditional public forums are places with a long history of being devoted to assembly and debate, such as public streets and parks. Designated public forums are locations or channels of communication that the government opens up for use by the public for expressive activity. Public property not open for public communication by tradition or designation is deemed a nonpublic forum.

*Surita v. Hyde*, 665 F.3d 860, 869 (7th Cir. 2011) (*Surita*). In a public or designated public forum, "[a]ny content-based exclusion of speech . . . is subject to strict scrutiny, meaning that the government must show the exclusion 'is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.'" *Id*. (quoting

*Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37, 45-46 (1983)). As to content-neutral restrictions, which are subject to intermediate scrutiny, "the Government may enforce reasonable time, place, and manner restrictions provided they are content neutral, they are narrowly tailored to serve a significant government interest, and ample alternative channels of communication exist." *Id.*

Plaintiff argues that the Board meetings are a designated public forum. Defendants do not dispute this. *See id.* ("A designated public forum is created when the government intentionally makes property or a channel of communication generally open or available to a class of speakers rather than permitting only selective access to particular speakers who must obtain permission to use it."); *see also Musso v. Hourigan*, 836 F.2d 736, 742 (2d Cir. 1988) (noting that an open school board meeting is a place where public speech is usually allowed). However, the parties disagree on whether the Board's restrictions as to Plaintiff were content-based or content-neutral and, thus, whether strict or intermediate scrutiny applies.

Restriction on speech is content-based if "the specific motivating ideology or the opinion or prospective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995). "Restrictions that favor or disfavor speech based on the speaker rather than the content of the message are still content based." *Surita*, 665 F.3d at 870. Where questions of material fact over the motivations for the restrictions exist, summary judgment is improper. *Ovadal v. City of Madison*, 416 F.3d 531 (7th Cir. 2005) (reversing summary judgment where there was question of fact whether city's ban on plaintiff's actions was content-neutral); *see also*

11

*World Wide Street Preachers Fellowship v. Town of Columbia*, 245 Fed. App'x 336, 348-9 (5th Cir. 2007) (reversing summary judgment where "there is a fact issue regarding whether the officers were actually motivated by the content of Plaintiffs' demonstration, which prevents summary judgment on the issue of whether the restriction was content-based or content-neutral.").

In this case, there is a question of material fact over the motivations of the Board in applying restrictions on Plaintiff's conduct. In their Motion, Defendants fail to mention the Notice of No Trespass, which Plaintiff refers to in his Complaint and Motion for Partial Summary Judgment. (Ex. B to Compl.) Because this Notice of No Trespass was directed only to Plaintiff, Plaintiff argues, without support in law or logic, that the restriction on Plaintiff's speech was plainly content-based. (Dkt. No. 100 at 3.) Defendants argue that the evidence shows that the Notice of No Trespass was issued to protect District 227 employees and students. The Notice of No Trespass references two events, Plaintiff's "threatening" conduct at the October 1, 2009 Board meeting and Plaintiff's "upsetting" presence at the District office on October 15, 2009, as rationale for the issuance of the Notice. (Ex. B to Compl.)

Defendants argue that because nothing in the Notice of No Trespass refers to Plaintiff's speech, the restriction is not content-based. But the language of the letter is not the sole factor in discerning the "specific motivating ideology" of the Board. Here, there is disputed evidence upon which a trier of fact could rely to find that the Board was "aimed at suppressing the speech of a specific speaker." *Vergara v. City of Waukegan*, 590 F. Supp. 2d 1024, 1037 (N.D. Ill. 2008). For example, Hunigan, who issued the

Notice of No Trespass, testified that he could not remember any "particulars" of the October 1, 2009 meeting, or why he referenced that meeting as the rationale for issuing the Notice. Similarly, Norwood testified that she did not remember anything in particular about the October 1, 2009 meeting.

In addition, there are other disputed facts that call into question whether restriction on Plaintiff's speech was content-based. A jury could infer that during the October 1, 2009 closed session, the Board anticipated that Plaintiff may discuss the alleged improper use of District funds by District employees, including Hunigan, and so the Board discussed options for preventing Plaintiff from speaking at the meeting that evening. In addition, the jury must weigh the credibility of Coleman's testimony as to why the Board stops community members from speaking before their time has expired.

Even if the Court were to apply intermediate scrutiny, as Defendants advocate, questions of material fact preclude summary judgment in favor of Defendants. Defendants must show that it is undisputed that the board enforced "reasonable time, place, and manner restrictions" that were "narrowly tailored to serve a significant government interest and ample alternative channels of communication exist." *Surita*, 665 F.3d at 869 (quoting *Perry*, 460 U.S. at 45-46).

Whether Defendants' restriction was reasonable raises questions of fact. Defendants cite a list of 17 videos from various Board meetings after November 17, 2009, and argue that they show that restrictions on Plaintiff's speech were "reasonable, non-discriminatory constraints which applied to all members of the public and that are perfectly legal." (Dkt. No. 84 at 6.) In *Mnyofu v. Board of Education of*

*Rich Township. High School District 227, Cook County, Ill.*, No. 03-cv-8717, 2007 WL 1308523, *1 (N.D. Ill. Apr. 27, 2007), Plaintiff brought similar claims against the Board and other defendants for First Amendment violations and civil conspiracy for the time period fall 2002 to spring 2005. *Id.* at *2. There, too, Defendants introduced a video recording of a Board meeting. Judge Grady held that:

> The tape simply is not dispositive – both sides could make arguments to a jury based on its contents. . . . A jury will have to decide whether McDonald intended to suppress plaintiff's speech based on its content or whether she genuinely believed that the disruption he caused justified his removal.

Similarly, here, a review of the tapes is not dispositive. Furthermore, the Board does not have videotape recordings for the Board meetings on October 1, 2009 and October 20, 2009, upon which Plaintiff also bases his First Amendment claim. In addition, Plaintiff claims that certain First Amendment violations occurred outside of Board meetings, such as his allegations that Winfrey confiscated flyers that Plaintiff was distributing outside a Board meeting.

Accordingly, Defendants' Motion for Summary Judgment is denied as to Count I. For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment, in which he moves for summary judgment that the Notice of Trespass violated the First Amendment, is denied.

### Section 1983 Conspiracy (Count III)

Plaintiff alleges that Defendants[2] had an agreement to deprive Plaintiff of his

---

[2] Except Defendant Winfrey, who was dismissed by this Court in the Court's June 2, 2011 Order.

constitutional rights. Defendants move for summary judgment, arguing that Plaintiff has failed to set forth any evidence of a conspiracy. Further, Defendants argue that the intra-conspiracy doctrine bars Plaintiff's claim.

"[T]o establish a *prima facie* case of a civil conspiracy, a plaintiff must show (1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 441-442 (7th Cir. 1988).

Plaintiff argues that the Board, Norwood, and Hunigan came to an implied agreement at the closed session October 1, 2009 Board meeting to restrict Plaintiff's speech. Defendants have provided an audio recording of this meeting.[3] (Dkt. No. 90, Ex. AG.) The meeting starts with Hunigan's (as identified by Plaintiff) stating that he received a letter from Plaintiff, making "serious allegations." Hunigan stated that Plaintiff may "get up and say something at our meeting tonight" regarding the allegations in the letter. Another Board member (Tony Brunson, as identified by Defendants) suggests that if Plaintiff submits a "card" and is going to speak to "that particular issue," the Board may want to "rule that it's a complaint, rule him out of order, and send him through the complaint process." Brunson further stated: "That should stop him right then and there from proceeding with whatever it is he might think he has a right to say in public." Another Board member said to "give him three minutes and well . . . ." A

---

[3] Because of the problems with the recordings noted above, the value of the evidence from the recordings for purposes of resolving the parties' Motions is extremely limited.

speaker that appears to be Brunson then stated that he "did this to [Plaintiff] a couple years and he stopped right there and then." A jury could infer from this recording that Defendants came to an implied agreement to violate Plaintiff's First Amendment rights.

Plaintiff also argues that Defendants conspired to violate Plaintiff's First Amendment rights by banning him from attending Board meetings, as evidenced by the Notice of No Trespass. The Notice was issued on October 21, 2009, in close temporal proximity to the October 1, 2009 closed-session Board meeting, discussed above. Thus, a jury could infer, based on these facts, that the Notice of No Trespass resulted from Defendants' implied agreement at the October 1, 2009 closed-session meeting. *See Bell v. Milwaukee*, 746 F.2d 1205, 1255 (7th Cir.1984) (courts have recognized that plaintiffs are rarely able to present direct evidence of a conspiratorial agreement and often must rely on circumstantial proof.). Viewing the record in a light most favorable to Plaintiff, there is evidence from which a jury could find that Defendants had an implied agreement to restrict Plaintiff's speech.

Defendants argue that regardless of the claim's merit, it is barred under the intra-corporate conspiracy doctrine, which holds that "a conspiracy cannot exist solely between members of the same entity." *Payton v. Rush-Presbyterian-St, Luke's Medical Center*, 184 F.3d 623, 632 (7th Cir. 1999); *see also Stenson v. Town of Cicero*, No. 03-cv-6642, 2005 WL 643334, at *8 (N.D. Ill. Mar. 15, 2005) (applying doctrine to Section 1983 cases) (citing *Tabor v. City of Chicago*, 10 F. Supp. 2d 988, 994 (N.D. Ill. 1998) (collecting cases)). Plaintiff does not dispute that the individual Defendants worked for the same entity.

Plaintiff argues that this case falls under exceptions to the intra-corporate conspiracy doctrine. The Seventh Circuit recognizes two scenarios in which the doctrine does not apply: (1) when employees are motivated solely by personal bias such that the interests of the corporation did not influence the employees' actions and (2) when the conspiracy is part of a broad discriminatory pattern. *Hartman v. Bd. of Trustees*, 4 F.3d 465, 470 (7th Cir. 1993). Plaintiff argues that Defendants were not acting within the course of their employment and that Defendants were motivated solely by personal bias or interest in silencing Plaintiff. An employee's act "is not within the scope of employment if it is done with no intention to perform it as part of or incident to a service on account of which he or she is employed." *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 995 (Ill. 2007). Put another way, actions done purely in the employee's own interest are not performed within the scope of his employment. *Wright v. City of Danville*, 675 N.E.2d 110, 118 (Ill. 1996).

Defendants make the conclusory statement that "[A]t all times, Defendants were acting within the scope of their employment." (Dkt. No. 109 at 11.) But the record demonstrates that there is a genuine issue of material fact as to whether Defendants acted with personal bias or interest. *See Coles v. City of Chicago,* 361 F. Supp. 2d 740, 750 (N.D. Ill. 2005) ("Facts related to the subjective intent of the employee are highly relevant to the scope of employment issue."). For example, Norwood gaveled the meeting to a close while Plaintiff was still speaking. A jury could infer from this conduct, coupled with the discussion regarding Plaintiff at the October 1, 2009 closed-session Board meeting, that Defendants were acting out of personal interest in preventing

Plaintiff from making critical statements of Defendants at the October 1, 2009 Board Meeting. Accordingly, there is a factual issue as to whether Plaintiff's claim is barred by the intra-conspiracy doctrine.

*Qualified Immunity*

Defendants argue that they are entitled to qualified immunity, which they assert as their Second Affirmative Defense. "Analysis of an assertion of qualified immunity involves two familiar questions: (1) whether a constitutional right was violated using plaintiff's version of the facts, and (2) whether that right was clearly established at the time." *Surita*, 665 F.3d at 868. Because there is a material question of fact as to whether Plaintiff's constitutional rights have been violated, the individual Defendants have not established that they are entitled to qualified immunity.

*Breach of the October 2009 Settlement Agreement (Count IV)*

Both parties move for summary judgment on Count IV, in which Plaintiff alleges that the Board breached the 2008 Settlement Agreement's confidentiality clause when it revealed the amount of payment made to Plaintiff under that Agreement in response to a request by Matteson District 162 on May 27, 2009. (Compl. ¶ 17.) The Agreement provides that: "should this agreement or its terms be requested pursuant to subpoena, statute or other lawful process or as otherwise required by law, said disclosures will not constitute a breach of the confidentiality clause." (*Id*. ¶ 60.)

The Board does not dispute that it disclosed the Settlement Agreement to District 162. However, the Board argues that it is entitled to summary judgment because the Board was required to disclose the Settlement Agreement when it received a valid IFOIA

request.  The Board's IFOIA argument was addressed by this Court's ruling on Defendants' Motion to Dismiss.  Section 2.20, which provides for disclosure of asettlement agreement entered into by a public entity, was not in effect when the Board disclosed the Agreement to District 162.  *See Mnyofu*, 832 F. Supp. at 950 (noting that Section 2.20 took effect on January 1, 2010).  In addition, Defendants filed a Motion to Reconsider this Court's ruling, which was denied.  In the briefing on the Motion to Reconsider, Defendants argued for the first time in their reply that Section 2.20 of FOIA codified existing Illinois law.  This argument was held to be waived.  (Dkt. No. 51 at 2.) The Board now re-raises that argument here.

The Board first relies upon the Illinois Attorney General's ("AG") Public Access Opinion No. 10-004, arguing that it represents the law on settlement agreements under FOIA as of the date that the Board disclosed the Agreement to District 162.  The Board's argument is not persuasive.  Opinion No. 10-004 was issued on December 29, 2010, and clearly involves the application of Section 2.20.  The Opinion contains no analysis of the state of Illinois law before Section 2.20 became effective.

Next, the Board argues that in *Lee Publications, Inc. v. Dolton School Dist. No. 149*, No. 03-CH-16548, 2004 WL 579345, at *1 (Ill. Cir. Jan. 29, 2004) (*Lee Publications*), the court held that "the public release of a confidential settlement agreement entered into by a school district was mandated."  (Dkt. No. 84 at 15.)  In *Lee Publications*, the former superintendent filed a federal lawsuit against the school board, alleging that certain of her contractual and constitutional rights were being violated when she was placed on paid administrative leave by the school board.  The

19

lawsuit was resolved by a settlement agreement.  The court held that the settlement

agreement did not fall into the personnel-filed exemption under 5 ILCS 140/7(1)(b)(ii))

or the general exemption under 5 ILCS 140/7(1)(b) of IFOIA.  *Id*. at *4.  Nothing in the

court's recitation of the facts suggests that the settlement agreement contained a

confidentiality clause, as this Agreement does.  In addition, the settlement agreement

involved payments to a former public employee.  Most importantly, one, unpublished

case from the Illinois Circuit Court does not support Defendants' argument that Section

2.20 *codified* existing Illinois law.

The Board also cites *Carbondale Convention Center, Inc. v. City of

Carbondale*, 614 N.E.2d 539 (Ill. App. Ct. 1993) (*Carbondale*), arguing that settlement

agreements were not exempt from then existing IFOIA when the Board disclosed the

Agreement.  (Dkt. No. 101 at 5.)  *See* 5 ILCS 140/7 (setting out exemptions to inspection

and copying under FOIA, effective August 29, 2008 to May 31, 2009).  But the case does

not stand for the proposition asserted by Defendants.  In *Carbondale*, the Carbondale

Convention Center and the City of Carbondale entered into a settlement agreement.

When the action was dismissed by the trial court, the dismissal order contained a gag

order at the request of the parties.  *Id*. at 475-76.  The Southern Illinoisan newspaper filed

an FOIA request for the settlement agreement.  The City of Carbondale denied the

request.  The court addressed whether, based on the trial court's gag order, the settlement

agreement fell under an IFOIA exception, which provides that information prohibited

from disclosure by federal or state law may not be disclosed.  The court held that because

the defendant requested that the court impose the gag order, the exemption did not apply.

20

The court also addressed whether the settlement agreement fell into the general exception, which prohibits the disclosure of "[i]nformation which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy." The court remanded the case to the trial court for a hearing as to whether this exemption applied. It is clear *Carbondale* made no determination that settlement agreements were *not* exempted from the IFOIA during this time period.

The Board has failed to establish that it was required to disclose the Agreement to District 162 "pursuant to subpoena, statute or other lawful process or as otherwise required by law." Because the Board has failed to establish, as a matter of law, that it did not breach the Agreement when it so disclosed it on March 27, 2009, Plaintiff's Partial Motion for Summary Judgment is granted as to Count IV.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is denied in its entirety. Plaintiff's Motion for Partial Summary Judgment is denied as to Count I and granted as to Count IV.

Date: <u>November 1, 2012</u>

JOHN W. DARRAH
United States District Court Judge

1.